UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**PATRICIA A JACK-CHRETIEN**          **CASE NO.  2:20-CV-01427**

**VERSUS**                                              **JUDGE JAMES D. CAIN, JR.**

**RESCARE**                                           **MAGISTRATE JUDGE LEBLANC**

REPORT AND RECOMMENDATIONS

Before the court is a claim filed *in forma pauperis* by *pro se* plaintiff Patricia A Jack-Chretien.  Doc. 1, as amended by Doc. 5.  Plaintiff alleges that she was wrongfully terminated from her employment with defendant ResCare Home Care (formerly known as ResCare Respite Care).  Doc. 1, p. 1; doc. 5, p. 2.

"To guard against abuse of the free access provided to courts by the *in forma pauperis* statutes, a district court must screen cases brought under 28 U.S.C. § 1915." *Smith v. Woods*, No. CV 19-14779, 2020 WL 3606271, at *7 (E.D. La. July 2, 2020), *aff'd*, 853 F. App'x 980 (5th Cir. 2021).  In this regard, "[t]he Court is empowered to screen any civil complaint filed by a party proceeding *in forma pauperis* to determine whether the claims presented (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)." *Brasher v. 15th Jud. Dist. Ct.*, No. 6:24-CV-00207, 2024 WL 3688377, at *2 (W.D. La. July 12, 2024), *report and recommendation adopted*, No. 6:24-CV-00207, 2024 WL 3681580 (W.D. La. Aug. 6, 2024).

After conducting an initial review of plaintiff's wrongful termination claim, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**.

# I.
## PROCEDURAL BACKGROUND

On first reviewing Plaintiff's original Complaint [doc. 1], the Court issued an Amend Order explaining the Court's screening responsibility and the requirements of Rule 8 of the Federal Rules of Civil Procedure. Doc. 4. The Amend Order explained that the Complaint "fails to provide information that the court needs to properly evaluate whether she has properly stated a claim against any one person or entity that would be recognized in this court." *Id.* The Amend Order instructed that the Complaint should include:

(1) the name(s) of each person who allegedly violated plaintiff's rights;

(2) what rights plaintiff claims have been violated and under what legal theory;

(3) a brief description of what actually occurred or what each defendant did to violate plaintiff's rights;

(4) the place and date(s) that each event occurred; and

(5) a description of the alleged injury sustained as a result of the alleged violation.

Doc. 4, p. 2. Plaintiff was ordered to amend her complaint to comply with the parameters of Rule 8; allege facts in short, concise, numbered paragraphs; clarify the legal basis of her claim; include a brief statement of relief sought; and identify those individuals against whom she is asserting the claim(s). *Id.* Plaintiff was also ordered to "provide the Court with a copy of the letter filed with the EEOC which led to the issuance of the Dismissal and Notice of Rights, attached to Plaintiff's complaint." Doc. 4, p. 3 (citing doc.1, att. 1). Plaintiff timely filed an Amended Complaint. Doc. 5.

## II.
### SUMMARY OF THE COMPLAINT

The following facts are gleaned from the original Complaint [doc. 1] and the Amended Complaint [doc. 5]. Plaintiff began working for ResCare Home Care (formerly known as ResCare Respite Care) in April, 2005. Doc. 1, p. 1. In September 2019, Plaintiff emailed her manager about needing medical leave and moving to southern Louisiana from Seattle. *Id.* Plaintiff moved to Louisiana in February 2019, after giving the Seattle office two weeks' notice. *Id.* Despite her request for a transfer, the employer did not provide any transfer paperwork. *Id.* In March 2019, Plaintiff contacted the Louisiana human resources office of ResCare, and she was told that no transfer paperwork had come. *Id.* After Plaintiff made repeated attempts to contact the human resources office, she had a meeting in which she was told that her paperwork had come in and she was told to report to a job site. *Id.* When she arrived at the assigned job site, she learned that she would be doing a different type of work than she was used to doing; that is, she would be taking care of more than one person at a time. *Id.* Plaintiff was never sent to orientation to learn standard practices in Louisiana, which she believes would have been beneficial. *Id.* at 3.

On June 5, 2019, after working for April and May at the new jobsite, Plaintiff received a call informing her that she would receive a reduction in her pay rate. Doc. 5, p. 1 She had worked for April through early June at her "regular pay" rate. *Id.* She acknowledges the cost of living difference between Seattle and Lake Charles. *Id.* at 2. She was nonetheless upset by the surprise of not being told about the pay reduction in advance. Doc. 1, p. 1. She skipped work the following day because she was upset, then returned to work on June 7, 2019. *Id.* She had a meeting with the "ED" on June 10, 2019, in which she asked why she was not told in advance of her pay reduction, and she received unsatisfactory answers. *Id.* The ED offered to transfer her back to Seattle. *Id.* at 2.

On August 2, 2019, Plaintiff received a text notification that she was suspended pending an investigation. *Id.* On August 6, 2019, she was called in to discuss the incident that led to her suspension. *Id.* She was told that she left a client outside alone, which she believed to be untrue. *Id.* She explained that she had been asked to take a coworker's client down a ramp to meet with the client's "DSP and the rest of her class." *Id.* After confirming that the DSP was outside, she helped the coworker's client down the ramp and then quickly returned into the building to care for her own clients. *Id.* Her employer showed her a blurry cellphone video appearing to show no other people outside. *Id.* Plaintiff believes the video was altered and that other camera footage from the building would show that there were people around. *Id.* Plaintiff insists that she would not have left a client unattended outside after 15 years of working. *Id.*

Plaintiff was sent home and did not hear from the employer again until August 12, 2019, when she was called in to sign "a staff development for additional training." Doc. 1, p. 3. She was dealing with a family emergency that day, so her employer contacted her the next day to ask if she planned to return to work. *Id.* Because plaintiff was not available until quitting time on August 15, 2019, and the acting supervisor was not available the following day, they arranged to meet on Monday August 20, 2019. *Id.* Plaintiff was not able to come in on August 20 because of the family emergency and asked if she could come on August 21, 2019. *Id.* When she arrived, she was informed that she would need to "sign infractions because . . . all of those missed days were unexceptable." *Id.* Plaintiff was told that she had been expected back at work on August 12, 2019. *Id.* She was under the impression that she was suspended, not that she had "missed days." Doc. 5, p. 2. Plaintiff refused to sign the paperwork, and she was told that she could not stay and work if she did not sign the paperwork. Doc. 1, p. 3. She was told to expect a call from the ED but never received one, and she did not receive a call back to work. *Id.* at 2.

Plaintiff's employment with ResCare ended. Plaintiff does not describe the exact manner of her employment separation, but she insists that she did not quit her job. Plaintiff believes "someone came up with a way to get rid of me." *Id.* at 3. She says, "I believe I was not forced out, not necessarily because of my race or age but because of my salary. I realize that the cost of living in the state of Washington is considerable compared to the state of Louisiana. However, I was not told about a decrease in pay in advance." Doc. 5, p. 2.

Plaintiff states that "I was wrongfully fired so I am suing for wrongful termination and my retirement." Doc. 5, p. 2.

Attached to the Complaint is a U.S. Equal Employment Opportunity Commission Dismissal and Notice of Rights (EEOC Form 161), addressed to Patricia A. Jack-Chretien. Doc. 1, att. 1. It states that the EEOC is closing the file for the following reason:

> The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

Doc. 1, att. 1, p. 1. Contrary to the instructions of the Amend Order, Plaintiff did not provide the Court with a copy of the letter filed with the EEOC which led to the issuance of the Dismissal and Notice of Rights.

### III.
#### LAW AND ANALYSIS

Under 28 U.S.C. §1915(e)(2)(B), a district court may *sua sponte* review an action filed *in forma pauperis* and dismiss it before service on the defendants if the court determines that "the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Nietzke v. Williams,* 490 U.S. 319,

325, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989).  Dismissal for failure to state a claim is appropriate if the facts as pleaded fail to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted).  The "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (cleaned up, citation omitted).  Although a complaint need not contain detailed factual allegations, it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678.

"Pro se plaintiffs are held to a less stringent pleading standard than documents drafted by attorneys and are entitled to a liberal construction, allowing all reasonable inferences that can be drawn from their pleadings." *Morgan v. Fed. Exp. Corp.*, 114 F.Supp.3d 434, 436 (S.D. Tex. 2015). Nevertheless, pro se plaintiffs must "still comply with the rules of procedure." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265 (5th Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972);  *Grant v. Cellular*, 59 F.3d 523, 524 (5th Cir. 1995)).

State law determines whether a person is employed at will or has a protected property interest in her employment. *See Bishop v. Wood*, 426 U.S. 341, 344 (1976); *Wallace v. Shreve Mem'l Library*, 79 F.3d 427, 429 (5th Cir. 1996). "Under Louisiana law, a person employed for an indefinite period is an employee at will."  *Wallace*, 79 F.3d at 429 (citing *Gilbert v. Tulane Univ.*, 909 F.2d 124, 126 (5th Cir. 1990)).  "An at-will employee is free to quit at any time without liability to his or her employer and may be terminated at any time, for any reason or for no reason at all, provided the termination does not violate any statutory or constitutional provision."  *Gilbert*,

909 F.2d at 126; *see also* La. Civ. Code art. 2747. The right to terminate an at-will employee at any time

> is tempered by numerous federal and state laws which proscribe certain reasons for dismissal of an at-will employee. For instance, an employee cannot be terminated because of his race, sex, or religious beliefs. Moreover, various state statutes prevent employers from discharging an employee for exercising certain statutory rights, such as the right to present workers' compensation claims. Aside from the federal and state statutory exceptions, there are no "[b]road policy considerations creating exceptions to employment at will and affecting relations between employer and employee."

*Quebedeaux v. Dow Chem. Co.*, 2001-2297 (La. 6/21/02), 820 So. 2d 542, 545–46 (internal citations omitted).

Plaintiff makes a conclusory allegation that she was wrongfully terminated. Doc. 5, p. 2. "An employee is presumed to be at-will unless there is an employment agreement. Plaintiff does not make any allegation that there was an employment agreement and accordingly must be considered an at-will employee who could be terminated for any reason as long as the termination did not violate a statutory or constitutional provision." *Johnson v. Wal-Mart Assocs. Inc.*, No. 6:18-CV-01655, 2019 WL 1104196, at *1 (W.D. La. Mar. 8, 2019) (citing *Quebedeaux*, 820 So. at 546).

Plaintiff does not indicate that a statutory or constitutional provision was violated here. Plaintiff alleges that the Seattle and Louisiana ResCare branches were slow to generate, send, and process her transfer paperwork. She alleges that the Louisiana branch was slow in telling her that she would have a lower pay rate in Louisiana, as well as being generally uncommunicative and unwise in not sending her to Louisiana orientation. She alleges that unidentified individuals—presumably employees of ResCare—conspired to make it appear that she had left a client unattended outside, when she had in fact left the client in the care of another professional. She alleges that the resulting investigation was inept and reached illogical conclusions. She identifies

no law that has been broken by these lapses, nor does she point the Court in the direction of a contractual, statutory, or constitutional provision that may have been offended by her employer's conduct.

A complaint cannot support a cause of action for wrongful termination by merely alleging that a termination was wrongful without alleging that the employer violated a statutory or constitutional provision. *Johnson*, 2019 WL 1104196, at *1. Accordingly, Plaintiff's complaint does not support a cause of action for wrongful termination.

In addition, as described in the first section of this Report and Recommendation, Plaintiff was ordered to amend her complaint to more fully set forth the legal theory under which she seeks relief, the nature of her injury, the identities of the persons or entities who allegedly violated her rights or the law. The Amend Order notified Plaintiff that "[f]ailure to comply with this order may result in dismissal of the claims above as frivolous under 28 U.S.C. § 1915 or dismissal of the action under Rule 41(b) of the Federal Rules of Civil Procedure." Although the Amended Complaint attempts to comply with the Amend Order by creating numbered paragraphs and providing a more succinct summary of the facts, the Amended Complaint does not identify the individuals who are alleged to have harmed her, "My complaint is not aim at an individual, but several individual" [doc. 5, p. 2], nor does it provide a description of the alleged injury sustained as a result of the alleged violation. Plaintiff states only, "I was wrongfully fired so I am suing for wrongful termination and my retirement." *Id.*

For the reasons stated, after conducting an initial review of plaintiff's wrongful termination claim, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), any party aggrieved by this Report and Recommendation has 14 days from its service to file specific, written objections with the clerk of court. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation 14 days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in chambers this 10th day of October, 2024.

_____
**THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE**